UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| PHILLIPS RANDOLPH | ) |
| ENTERPRISES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 06 C 4968 |
| | ) |
| RICE FIELDS d/b/a BAISI THAI | ) |
| RESTAURANT, INC., THAI | ) |
| OAKBROOK, INC., YING C. CHEN; | ) |
| TEH HUEI LU, and JOHN DOES 1-10, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendants Rice Fields, Inc., Thai Oakbrook, Inc., Ying C. Chen, Teh Huei Lu, and John Does 1-10 (collectively referred to herein as "Rice Fields") to dismiss the complaint of Plaintiff Phillips Randolph Enterprises LLC ("Phillips"). For the reasons set forth below, the motion is denied.

## BACKGROUND

According to the complaint, Rice Fields, or someone acting under their direction, faxed Phillips a one-page menu for a Chicago restaurant called Baisi Thai. Phillips

alleges that it had no prior relationship with Rice Fields and did not authorize Rice Fields to send it advertisements by fax. In addition to a listing of available dishes and corresponding prices, the menu provided information on how to "have your number removed," which apparently would allow recipients to indicate that they did not wish to receive additional faxes.

Phillips filed a three-count complaint in the Circuit Court of Cook County, asserting violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; violations of the Illinois Consumer Fraud Act, 815 ILCS 505/2; and the tort of conversion. The complaint also set forth class allegations, interpreting the statement regarding removal of numbers to indicate that Rice Fields had sent the unsolicited fax to others as well.

Rice Fields removed the case to our court and moved to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). Phillips then voluntarily dismissed the two state law claims, leaving solely the TCPA count.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe allegations of a complaint in the light most favorable to the plaintiff,

and accept as true all well-pleaded facts and allegations in the complaint. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993); Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed under this rule unless it is patently clear that the plaintiff cannot prove any set of facts in support of the claim that could entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45–46 (1957). A pleading need only convey enough information that the defendant is able to understand the gravamen of the complaint. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir. 1999). With these principles in mind, we consider the instant motion.

## DISCUSSION

In pertinent part, the TCPA prohibits using a fax machine, computer, or other device to send unsolicited advertisements to fax machines. 47 U.S.C. § 227(b)(1)(C). Recipients of unsolicited fax advertisements may sue for actual damages incurred from the receipt of the advertisement or $500 per violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B). If a violation is found to be willful or knowing, the damage award may be trebled. 47 U.S.C. § 227(b)(3).

Rice Fields contends that the complaint fails to state a claim because the TCPA is unconstitutional. It sets out two challenges to the statute's validity. First, it contends that the minimum $500 award is so large in comparison to the amount of damages

alleged by Phillips that application of the TCPA in this setting would offend the due process guarantee of the Fifth Amendment. Second, it argues that the statute on its face is a violation of the First Amendment under the test set forth in Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n, 447 U.S. 557, 566, 100 S. Ct. 2343, 2351 (1980). We examine each argument in turn.

## A. Due Process Challenge

Though, as noted above, the complaint contains class allegations, no class has yet been certified. Thus, we confine our consideration to Phillips' individual assertions. In support of its argument that the $500 minimum award would be unconstitutionally excessive in this case, Rice Fields relies heavily on recent Supreme Court jurisprudence striking down state jury awards of punitive damages that vastly exceed corresponding compensatory awards. State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408, 123 S. Ct. 1513 (2003); BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589 (1996). Rice Fields insists that the standards set out in those cases apply to statutory settings as well as jury awards because those cases sought guidance from others involving statutory damages, such as St. Louis, Iron Mountain, and Southern Railway Co. v. Williams, 251 U.S. 63, 40 S. Ct. 71 (1919) and Waters-Pierce Oil Co. v. Texas, 212 U.S. 86, 29 S. Ct. 220 (1909).

State Farm and BMW both examined jury awards and focused on issues of notice to defendants of the severity of punishment that could be imposed. While it is certainly true the results reached in State Farm and BMW were in part based upon guidance from cases involving legislatively determined damage amounts, considerations pertinent to the validity of jury awards are not the same as those attendant to damage amounts set by statutes. Rather than looking retrospectively at a particular and established fact situation, the legislature must choose a benchmark that will be appropriate to many different situations, as well as taking into account considerations such as the public interest. When, as in this case, there are "numberless opportunities for committing the offense," the legislature is justified in establishing an amount of damages that could be oppressive in other settings. Williams, 251 U.S. at 67, 40 S. Ct. at 73.

Contrary to Rice Fields' contention, the harm suffered from the actions targeted by the statute are not limited to the cost of materials used to print the fax. In choosing $500 as the minimum penalty for the TCPA, Congress also took into account harm that would be difficult to quantify, such as business interruption costs and wasted time. See Kenro, Inc. v. Fax Daily, Inc., 962 F. Supp. 1162, 1166 (S.D. Ind. 1997). In addition, the statute aimed to curb the practice of shifting advertising costs to an unwilling recipient even if only in a single instance. Id. The amount chosen is high enough to

serve as a disincentive to this practice in the industry as a whole. As a result, the severity of the potential punishment is not out of proportion with the offense or obviously unreasonable, even where the transmission consists of a single page. See Williams, 251 U.S. at 67, 40 S. Ct. at 73.

In its reply, Rice Fields states that $500 would be a financially feasible amount if it were imposed, but the potential damages that could result from a class action involving many separate violations would result in crippling numbers. This argument is a nonstarter. Though the amount of damages could become very high if the statute is violated numerous times, as in the context of a class action, the purpose of the statute is to combat transmission of unsolicited fax advertisements. The statute accomplishes that purpose by making the practice prohibitively expensive, which is an acceptable means of accomplishing the statute's goal of deterrence. Contrary to Rice Fields' implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.

## B. First Amendment Challenge

In its second challenge, Rice Fields contends that the TCPA represents an unconstitutional abridgement of its First Amendment right to engage in commercial speech by faxing its menus. According to Rice Fields, the TCPA cannot pass muster

under the four-part test established for commercial speech in Central Hudson Gas & Elec. Corp. v. Publ. Serv. Comm'n, 447 U.S. 557, 566, 100 S. Ct. 2343, 2351 (1980). Under this test, if commercial speech is within the ambit of the First Amendment (i.e., concerns lawful activity and is not misleading), the government must have a substantial interest in regulating it. See id. The regulation must directly advance the interest at issue, and it must not be more extensive than necessary to serve the interest the government has asserted. See id.

There is no dispute that the menu concerned lawful activity and was not misleading, so the first part of the test is satisfied. With regard to the second prong, Rice Fields contends that Congress did not advance any empirical data to support the significance of the asserted interests of preventing cost shifting and time wasted. In support of its contention that such data is a necessary prerequisite to a legislated restriction on speech, Rice Fields relies on Edenfield v. Fane. 507 U.S. 761, 771, 113 S. Ct. 1792, 1800 (1993). However, nothing in Edenfield undermines the validity of the TCPA. The case states that a governmental body seeking to restrict commercial speech must set forth harms that are real, not speculative or the product of conjecture. See id. As the Eighth Circuit noted in examining a similar challenge to the TCPA, a legislative body can establish the reality of a harm by means other than the empirical studies that Rice Fields insists are mandatory, and Congress used acceptable alternative

bases when enacting the TCPA. Missouri ex rel. Nixon v. American Blast Fax, Inc., 323 F.3d 649, 654 (8th Cir. 2003).

With respect to the third factor, Rice Fields contends that exceptions within the statute for certain types of faxes render the TCPA incapable of directly advancing the government interest in protecting against unsolicited faxes. However, there can be no question that the TCPA's prohibitions on unsolicited faxes materially alleviates the harms Congress identified as associated with their receipt. See Edenfield, 507 U.S. at 771, 113 S. Ct. at 1800. Fewer faxes mean potential recipients incur fewer costs and waste less time.

Finally, Rice Fields argues that the provisions of the TCPA are more extensive than necessary to serve the interest identified because there were other means that Congress could have employed, such as allowing fax recipients to opt out of receiving additional faxes by contacting the advertiser or seeking inclusion on a "do not fax" list. This argument fails for two reasons. First, the Supreme Court has made clear that Central Hudson does not require a legislature to choose the least restrictive means available in order to satisfy the last factor of the test it sets forth. See Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 556, 121 S. Ct. 2404, 2422 (2001). The methods employed by the TCPA reasonably fit the goal of reducing the costs and wasted time produced in the receipt of unsolicited fax advertisements, so the restriction is not more

extensive than necessary. See id. Second, the "alternatives" Rice Fields proposes are not equivalent to those embodied in the TCPA in that they would place the burden of avoiding unwanted faxes onto the recipient, thus undermining the remedy the statute embodies. The restrictions within the TCPA are not more extensive than necessary to serve the expressed governmental interests, and the statute passes constitutional muster under Central Hudson. Consequently, Count I of the complaint states a claim upon which relief can be granted, and the motion to dismiss must be denied.

## CONCLUSION

Based on the foregoing, Rice Fields' motion to dismiss Count I of the complaint is denied.

Charles P. Kocoras
United States District Judge

Dated: JAN 11 2007